# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JUSTIN OFFORD                                          CIVIL ACTION

VERSUS

GERALD LANE, ET AL.                                    NO.: 12-00524-BAJ-SCR

## RULING AND ORDER

Before the Court is **Defendants' Motion for Summary Judgment (Doc. 65)**, filed by Defendants Gerry Lane Enterprises, Inc. and Eric Lane[1] (collectively "Defendants"), seeking an order from this Court granting summary judgment, pursuant to Federal Rule of Civil Procedure 56, and dismissing Plaintiff Justin Offord's ("Offord") claims. Offord opposes the motion. (Doc. 68.) Defendants filed a reply memorandum. (Doc. 73.) Offord filed a sur-reply memorandum. (Doc. 79.) Oral argument is not necessary. Jurisdiction is proper, pursuant to 28 U.S.C. § 1331. For the reasons stated herein, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Defendant Eric Lane is named as a Defendant in his capacity as the Representative of the Succession of Gerald R. Lane. (Doc. 49.)

# I.    Background

## A.    Offord's First Amended Complaint[2]

Offord filed this employment discrimination lawsuit pursuant to Title VII of the Civil rights Act of 1964, 42 U.S.C. § 2000, *et seq.* ("Title VII"), and the Louisiana Employment Discrimination Law, La. R.S. § 23:301, *et seq.*[3]   Offord alleges that Defendants discriminated against him on the basis of his national origin, race, and sex and constructively discharged him from his sales associate position at Gerry Lane Chevrolet in Baton Rouge, Louisiana.  Specifically, Offord alleges that dealership owner, Gerald R. Lane ("Lane"), and his assistant, Wayne Garafola ("Garafola"), created a hostile work environment in which Offord was subjected to discriminatory comments, name-calling, abusive language, intimidation, lewd comments and advances, and unwelcome physical contact.  According to Offord, Defendants also retaliated against him in response to his complaints of unlawful discrimination.   Offord's Complaint also alleges that Defendants actions amounted to intentional infliction of emotional distress.   Offord further alleges claims for assault and battery, pursuant to La. R.S. § 14:36 and La. Civ. Code art. 2315, and a claim for unpaid wages under La. Rev. Stat. § 23:631, *et seq.*

---

[2] Offord originally filed this lawsuit along with ten other current and former employees of Gerry Lane Enterprises, Inc.  (Doc. 1.)  Subsequently, the Court issued an order requiring the Clerk of Court to sever the claims into eleven separate lawsuits, and requiring each plaintiff to file an amended complaint.  (Doc. 4.)  Accordingly, Offord filed his First Amended Complaint on September 11, 2012. (Doc. 6.)

[3] A previous ruling by this Court indicated that Offord also asserted a claim under 42 U.S.C. § 1981.  (Doc. 98, p. 1.)  However, a review of Offord's complaint reveals that he seeks damages under 42 U.S.C. § 1981(a) *only*, and did not allege a claim under 42 U.S.C. § 1981.

## B.    Undisputed Facts[4]

- Defendant Gerry Lane Enterprises operates as Gerry Lane Chevrolet, an automobile dealership in Baton Rouge.

- Prior to his May 2013 death, Lane owned a majority interest in Gerry Lane Enterprises.

- Lane's son, Eric Lane, owns a minority interest.

- Lane also owned a majority interest in three other new car dealerships in Baton Rouge: Gerry Lane Cadillac, Gerry Lane Buick GMC and Gerry Lane Imports.

- Eric Lane and Cedric Patton (African American) own minority interests in those dealerships.

- Since 2008, Cedric Patton has been responsible for the operations of Gerry Lane Chevrolet.

- During Offord's employment, Reynold Ankeny (Caucasian) served as a Sales Manager, reporting directly to Cedric Patton.

- Sales managers Ken Balthrop (African-American), Chad Bell (Caucasian), Cecil Overstreet (African-American), and JK Khamiss (Middle-Eastern) reported to Ankeny and directly supervised the sales force.

- The sales force typically comprises anywhere between twenty and thirty individuals.

- During the 2011-2012 time-frame, approximately seventy to eighty percent of the sales force was African-American.

- Offord is an African-American male.

- From May 2006 until September 2006, Offord worked for the Company as a Porter.

- From October 2006 until September 2008, he worked for the Company again as a salesperson.

---

[4] In accordance with Rule 56.1 of the Local Rules of the United States District Court for the Middle District of Louisiana, Defendants submitted a statement of undisputed material facts. (Doc. 64-2); L.R. 56.1.  In opposition, Offord submitted a response to Defendants' statement of undisputed material facts.  (Doc. 67-2); Fed.R.Civ.P. 56(c); L.R. 56.2.  Accordingly, only certain material facts are deemed admitted for purposes of this ruling and order.  L.R. 56.2.

- In May 2010, Offord began his third stint with Gerry Lane Enterprises as an employee.

- Like all employees, Offord received an initial orientation at the time of his hire.

- As part of this process, Offord received various policies governing the terms of his employment.

- These included Gerry Lane Enterprises' equal opportunity and non-harassment policies.

- When he began again in May 2010, Offord used the "n-word" during his conversation with two co-workers.

- Cedric Patton overheard the comment and specifically told Offord not to use such language in the future.

- Offord claims he refrained from using the word "at work" thereafter.

- Gerry Lane Enterprises generally grouped salespeople in one of three teams, Team A, B, or C.

- Offord was assigned to Team C.

- Over his last two years with the Company, Offord's sales were usually near the top of "Team C."

- On April 20, 2012, Offord's counsel sent a letter to the Company and Lane indicating that Offord intended to pursue legal claims for harassment and discrimination.

- Subsequently, Terry Bell (the individual handling human resources for Gerry Lane Enterprises) issued a written memorandum in which he instructed Offord to report any retaliation to him.

- Offord's counsel then instructed Defendants not to have any communication with Offord about any of the allegations of wrongdoing.

- Offord was not terminated following the receipt of notice that he intended to pursue claims against the Dealership and Lane.

- Lane provided Cedric Patton with an ownership interest in his business operations and put him in charge of the Chevrolet and Buick GMC dealerships.

- Garafola was Lane's personal assistant.

- Garafola had nicknames for many employees at Gerry Lane Enterprises.

- Garafola had nicknames for both men and women, such as Diane Trask ("Dolores"); Phil Waggenspack the Comptroller ("Philippe Navidad"), and Nola the Accounting Clerk ("Dora Mae").[5]

- Garafola did not ask Offord out on a date.

- When a customer buys a car, or when a test drive is needed, the Dealership will often provide the salesperson with a gas purchase order, or "gas PO" to pay for gas for the car being sold or test driven.

- Offord was denied the gas PO for personal use once after he threatened suit, by then new Manager, JK Khamiss.

- JK Khamiss was a new employee at the time.

- Offord was never physically injured when touched in any manner by Lane.

- Offord was not involuntarily transferred to a less desirable position, his job responsibilities were not altered in any way, and he was not given unsatisfactory job evaluations after the discrimination complaint.

## C.    Defendants' Motion for Summary Judgment

As to the instant motion, Defendants seek an order from this Court dismissing Offord's claims. Defendants contend that Offord is precluded from asserting federal or state law discrimination claims against individual supervisors. Defendants further argue that Offord cannot point to sufficient evidence to establish his discrimination claims on the basis of his sex, national origin, or race. Defendants also contend that Offord cannot point to sufficient evidence to establish his retaliation, constructive discharge, intentional infliction of emotional distress, or assault and battery, or unpaid wages claims.

---

[5] Nola's last name was not included in Defendants' statement of undisputed facts.

Accordingly, Defendants argue that summary judgment is warranted.

Offord concedes that relief under Title VII or the Louisiana Employment Discrimination Law is only available against an employer, and not against an individual supervisor or fellow employee. Offord further concedes that he cannot point to sufficient evidence to establish his unpaid wages claims. He argues, however, that there are genuine disputes of material fact that preclude summary judgment in favor of Defendants. Specifically, Offord contends that there are genuine disputes of material fact related to his race and sex discrimination claims, as well as his retaliation, constructive discharge, intentional infliction of emotional distress, and assault and battery claims. Accordingly, Offord contends that Defendants' motion must be denied. Offord does not make any specific arguments related to his national origin discrimination claim.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention to specific evidence in the record which demonstrates

that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323; *Liquid Air Corp.*, 37 F.3d at 1075.

In determining whether the movant is entitled to summary judgment, the court views facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Houston Independent School District*, 113 F.3d 528, 533 (5th Cir. 1997). The court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992). However, if the evidence in the record is such that a reasonable jury, drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor, the court must deny the motion for summary judgment. *International Shortstop, Inc.*, 939 F.2d at 1263.

## III.  Analysis

As an initial matter, as noted above, Offord concedes that relief under Title VII or the Louisiana Employment Discrimination Law is only available against an employer, and not against an individual supervisor or fellow employee. *Umoren v. Plano Indep. Sch.*

*Dist.*, 457 F. Appx. 422, 425 (5th Cir. 2012); *Mitchell v. Tracer Construction Co., et al.*, 256 F. Supp. 2d 520, 525 (M.D. La. 2003); *see also* La. R.S. 23:303(A). Offord also concedes that he cannot point to sufficient evidence to establish his unpaid wages claim. Accordingly, Defendants' request that the Court dismiss Offord's federal and state law discrimination claims against Lane, or any other individual supervisor or fellow employee, as well as his unpaid wages claim is **GRANTED**.

## A. Offord's Hostile Work Environment Claim on the Basis of His Sex[6]

"[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). Such a violation occurs when the plaintiff establishes (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 654 (5th Cir. 2012); *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Here, Defendants contend that Offord cannot establish that the harassment complained of affected a term, condition, or

---

[6] Employment discrimination claims under Title VII and the Louisiana Employment Discrimination Law are analyzed under the same standard. *Turner v. Kan. City Southern Ry. Co.*, 675 F.3d 887, 891 (5th Cir. 2012) (the Louisiana Employment Discrimination Law requires the same elements of proof as a Title VII hostile work environment claim); *Knapper v. Hibernia Nat'l Bank*, 49 So. 3d 898, 902 n.11 (La. Ct. App. 2010) ("Claims under the [Louisiana Employment Discrimination Law] are subject to the same analysis as discrimination claims under federal Title VII of the Civil Rights Act of 1964."). Accordingly, Offord's claims under Title VII and the Louisiana Employment Discrimination Law shall be jointly addressed and analyzed.

privilege of his employment.

In order for harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005) (quoting *Meritor Sav. Bank*, 477 U.S. at 67). For harassment to be sufficiently severe or pervasive to alter the conditions of employment, the conduct complained of must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Aryain v. Wal-Mart Stores of Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993). Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. *Harris*, 510 U.S. at 21-22. To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating; (4) whether it interferes with an employee's work performance. *Id.* at 23.

In his First Amended Complaint, Offord alleges that Lane's personal assistant, Garafolo "is openly homosexual and constantly makes lewd sexual innuendo and advances at the sales staff including Plaintiff [ ] by making inappropriate comments about sex and penises." (Doc. 6, p. 5.)

In opposition to the motion, Offord points to his deposition, in which he testified that Garafola asked him, "You going to be by the house at seven?" (Doc. 68-3, p. 33.)

Offord contends that Garafola made this comment in a sexually suggestive manner. However, Offord failed to point to any evidence to support this contention. Further, it is unclear from Offord's testimony exactly when, or how many times Garafolo made this comment.

Offord also testified that Garafola called him by the "pet name" "Tisha," and that he "didn't like being called Tisha." (Doc. 68-3, p. 34.) Offord further testified that Garafola "used to always say that my lips looked like a vagina" and that when Garafola saw him "walking up, . . . he'll say I'm either hanging to the left or right." (Doc. 65-6, p. 59.) It is unclear from Offord's testimony exactly when, or how many times Garafolo made these comments.

Offord further testified that if he "walk[ed] by [Garafola] too close, he used to slide his finger underneath my leg, my butt." (Doc. 65-6, p. 59.) When asked how often this occurred, Offord responded "[e]very time I walked by him he tried to." (Doc. 65-6, p. 59.) It is unclear from Offord's testimony exactly when, or how many times Offord attempted to touch or touched Offord's leg and/or buttocks.

When asked if he ever told Garafola to stop touching him, Offord responded, "I used to sometimes swat at his hand or move." (Doc. 68-3, p. 36.) Offord did not point to any other evidence in support his claim; nor did Offord point to any evidence that Garafola's actions affected his employment.

Simply put, Offord has failed to point to sufficient evidence from which a jury could conclude that the harassment complained of was severe or pervasive enough to affect a term, condition, or privilege of his employment. Even viewing the facts in the light most

favorable to Offord, Garafolo's actions simply do not approach the level of severe and pervasive conduct that would "destroy [Offord's] opportunity to succeed in the workplace." *Shepard v. Comptroller of Public Accounts of State of Tx.*, 168 F.3d 871, 874-75 (5th Cir. 1999) (evidence that a co-worker had made several sexually suggestive comments, often tried to look down the plaintiff's clothing, touched and rubbed the plaintiff's arm, and twice invited her to sit on his lap during office meetings was not sufficiently severe to be actionable under Title VII).

> Even when a hostile environment is shown, a plaintiff must establish that the workplace environment had the effect of altering the terms and conditions of his employment. Central to the court's inquiry into a hostile environment claim is whether the alleged harasser's actions have undermined the victim's workplace competence, discouraged him from remaining on the job, or kept him from advancing in his career. Title VII is intended only to prohibit and prevent conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace.

*Sparks v. Alrod Enters.*, No. 3:00-CV-2110-L, 2003 U.S. Dist. LEXIS 7095, at *17 (N.D. Tex. Apr. 28, 2003) (citing cases) (internal quotations omitted). Indeed, when compared to cases in which courts in this Circuit have denied summary judgment or afforded relief, Garafola's actions were simply not frequent or serious enough to alter the conditions of Offord's employment. *Compare Hockman v. Westward Communs., LLC*, 407 F.3d 317, 328-29 (5th Cir. 2004) (finding that the defendant's actions of making one remark to the plaintiff about another employee's body, slapping the plaintiff on her behind with a newspaper, grabbing or brushing against the plaintiff's breast or behind, attempting to kiss the plaintiff on one occasion, and standing in the door of the women's bathroom while the plaintiff was washing her hands did not qualify as a hostile work environment), *with*

*Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 524 (5th Cir. 2001) (finding that repeated sexual advances in the face of adamant refusals by the plaintiff were sufficiently extreme to qualify as a hostile work environment).

Accordingly, Defendants' request that the Court dismiss Offord's claim that he was subjected to a hostile work environment claim on the basis of his sex is **GRANTED**.

### B.    Offord's Hostile Work Environment Claim on the Basis of His Race

A plaintiff may establish a Title VII violation based on race discrimination creating a hostile work environment. *Ramsey*, 286 F.3d at 268. "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie case, the plaintiff must prove that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[7] *Ramsey*, 286 F.3d at 268. Here, Defendants argue that Offord cannot point to sufficient evidence to establish that the harassment complained of was based on race, or that it affected a term, condition or privilege of his employment.

In opposition, Offord argues that Lane subjected him, and other African American employees, to unwanted "face checks" to ensure they were clean shaven. Offord further

_____

[7] Where the harassment is allegedly committed by a supervisor with immediate authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima facie* case. *Celestine*, 266 F.3d at 353.

contends that Lane only checked African American employees' faces, and not white employees' faces. In support of his argument, Offord points to his deposition, in which he testified that Lane "checked [Offord's face] every time he walked in the building" to make sure he was clean shaven. (Doc. 68-3, p. 9.) Offord was unable to identify exactly how many times Lane touched his face. (Doc. 68-3, pp. 16-17.) When asked whether white employees' faces were also checked by Lane, Offord responded, "I never seen it." (Doc. 68-3, p. 9.) When asked whether Lane said anything that led him to believe the "face checks" were race-based, Offord responded, "[h]e did say that, I don't know why the black people like to have this stuff on they face." (Doc. 68-3, p. 18.)

Offord further contends that Lane constantly compared him, and other African American employees, to a "monkey" or "blind monkey." In support of this contention, Offord points to his deposition testimony, in which he testified that sometime between 2010 and 2012, Lane said, "I can get a blind monkey to come in and sell more cars than you." (Doc. 65-6, p. 43.) It is unclear from Offord's testimony exactly when or how often Lane made this comment. Offord further testified that Lane frequently referred to him and other African American employees who individually stood underneath a tree near the dealership, or gathered in a group under the tree, as "a monkey underneath the tree" or "a bunch of monkeys under the tree." (Doc. 68-3, pp. 45-48.)

Offord contends that Lane's use of the words "monkey" or "blind monkey" were race-based. Specifically, Offord contends that, sometime between 2008 and 2010, Lane stopped using the phrase "runaway slave" and replaced it with the phrase "blind monkey" after he was told to stop using the phrase "runaway slave." Thus, Offord contends the

phrase "blind monkey" was meant to have a racial connotation. However, when asked about the basis for this contention, Offord admitted that it was mere speculation:

> Q: All right. When Mr. - On any of the occasions that you personally heard Mr. Lane use the phrase blind money, did he ever say anything indicating that he meant it in a racist fashion?
>
> A: I knew what the, what that word meant. I knew why he used that, so whenever he used it, that's what I, I put it towards. I put it to a runaway slave because that's what he used to say.
>
> Q: Okay. So your, your understanding -
>
> A: He used to say it in the same sentence. He just changed the words.
>
> Q: Okay. And, and do you know why he changed the word?
>
> A: Somebody told him to.
>
> Q: Okay. But who told him to?
>
> A: I don't know.
>
> Q: Other than just sort of speculating, so you have any knowledge that somebody specifically told him to stop saying that and to say something else?
>
> A: One of the managers or something like that.
>
> Q: Okay. Are you speculating?
>
> A: Yes, that's what I'm doing, speculating.

(Doc. 65-6, p. 46; Doc. 68-3, p. 21.) Defendants failed, however, to present evidence to rebut Offord's allegation that Lane compared African American employees to a "runaway slave" or "monkey" or "blind monkey."

Offord also contends that Lane referred to him and other African American employees as "ghetto." In support of this contention, Offord points to his deposition, in

which he testified that Lane "[said] at one point[,] if he wanted to see the ghetto, talking to a group of black guys standing in one area, he'll go look underneath his - behind his fence in the back."  (Doc. 68-3, pp. 22, 25.)  Offord's testimony is supported by the deposition testimony of a white co-worker, who testified that Lane told Offord and two other African American employees "to break it up, to separate, if he wanted to see the goddamn ghetto, he would go behind the dealership."  (Doc. 68-4, pp. 7-8.)  Offord's testimony is further supported by the deposition testimony of another white co-worker, who testified that "[Lane would] say if I want to see a bunch of Negroes hanging out, I'll look behind my dealership."  (Doc. 68-5, p. 3.)

Offord also contends that Lane made other racially inappropriate comments.  In support of this contention, Offord points to his deposition, in which he testified about an incident where Lane accused him of lying:

> A: . . . And then I was selling - I think I sold 12 cars that month, and he asked me, 'Are you bogging up my board?" and bogging up my board means lying.  And I was saying, I said, "Do I lie, Mr. Lane," and he looked at me and said, "You the same color as Obama, aren't you?" . . .

(Doc. 68-3, p. 44.)  Offord's testimony is supported by the testimony a white co-worker, who testified that he witnessed Lane justify his accusation against Offord because Offord is the "same color as Obama."  (Doc. 68-6, p. 9.)  Offord also points to his testimony about an incident during a 2011 sales meeting, in which Lane referred to an African American finance manager's Native American heritage as being from the "nigga-ho tribe" in front of approximately twenty sales employees.  (Doc. 68-3, pp. 30-32.)  Offord's testimony is supported by the deposition testimony of the African American finance manager, who

testified that Lane "made the joke, 'well, [your grandfather] must have been the nigga-ho tribe." (Doc. 68-8, p. 9.)  Offord also points to Lane's deposition testimony, in which he admitted to using the term "nigger" before, but insisted that he's "used it in jest; and I hear them use it all the time." (Doc. 68-12, p. 4.)

Offord contends that his subjective belief that Lane's actions and comments were race-based, offensive, and hostile was reasonable considering Lane's insistence, on two occasions, that he was a "racist" and that he "earned the right to be." (Doc. 68-3, pp. 23, 45-46.) According to Offord, Lane had a long-standing policy of treating African American employees differently than he treated white employees. (Doc. 68-3, pp. 5-7, 13.) Offord's contention is supported by the deposition testimony of another white co-worker, who testified that Lane treated African American employees less favorably. (Doc. 68-5, pp. 3, 7.)

Viewing the facts in the light most favorable to Offord, the Court finds that he has presented sufficient evidence to establish a genuine dispute of material fact from which a jury could conclude that the harassment complained of was based on race.  Such a conclusion is underscored by the deposition testimony of Offord's white co-worker, who testified that he "never heard [Lane] talk to the white salespeople like the black salespeople.  Definitely.  He never said the same things to us that he would say to the others," and the deposition testimony of another white co-worker who testified that "[Lane] was making racial comments on a daily basis." (Doc. 68-4, p. 15; Doc. 68-5, p, 3.)

Viewing the facts in the light most favorable to Offord, the Court also finds that he has presented sufficient evidence to establish a dispute of material fact from which a jury

could conclude that the harassment was severe and pervasive. Indeed, the evidence presented by Offord suggests more than just a handful of racially-charged comments. Rather, the evidence presented supports the conclusion that Lane subjected Offord to race-based insults, ridicule, and intimidation on a regular basis. *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007) ("Frequent incidents of harassment, though not severe, can reach the level of 'pervasive,' thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists.").

Further, where, as here, the plaintiff has presented evidence of a pattern of race-based harassment, it is appropriate for the Court to consider incidents of non-race-based harassment. *Compare WC&M Enters, Inc.*, 496 F.3d at 400 (determining that a fact finder could reasonably conclude that a co-worker's frequent banging on the glass partition of the plaintiff's office was motivated by animus related to the plaintiff's national origin because the same co-worker had repeatedly called the plaintiff "Arab" for approximately one year), *with Hernandez*, 670 F.3d at 654 (declining to consider incidents of harassment not based on race where there was no evidence that the conduct was part of a pattern of race-based harassment). The Court finds that when evidence of Lane's race-based harassment of Offord is taken together with evidence of the non-race-based harassment, it is reasonable to conclude that the harassment complained of was severe or pervasive enough to affect a term, condition, or privilege of Offord's employment. Accordingly, Defendants' request that the Court dismiss Offord's hostile work environment claim on the basis of his race is **DENIED**.

**C.      Offord's Hostile Work Environment Claim on the Basis of His National Origin**

A plaintiff may establish a Title VII violation based on national origin discrimination creating a hostile work environment. To establish a prima facie case, the plaintiff must prove that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on national origin; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[8] *Ramsey*, 286 F.3d at 268 (citations omitted). Here, Defendants contend that Offord failed to allege a separate and distinct national origin discrimination claim. Offord failed to present any argument or evidence in opposition to Defendants' argument.

National origin, though often confused with race, refers to "the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co., Inc.*, 414 U.S. 86, 88 (1973). Accordingly, the EEOC Guidelines on Discrimination Because of National Origin define national origin discrimination "broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1.

---

[8] As mentioned above, where the harassment is allegedly committed by a supervisor with immediate authority over the harassed employee, the plaintiff need only satisfy the first four elements of the *prima facie* case. *Celestine*, 266 F.3d at 353.

Nothing in the record suggests that Offord's national origin is *not* American. Indeed, Offord failed to present any evidence regarding his or his ancestor's place of origin.

During his deposition, Offord testified that he considers his race *and* national origin to be African American:

> Q:    . . . you've made the allegation that you were discriminated against because of your national origin, and I just want to make sure that I understand where that's coming from. You [were] born and raised in Baton Rouge, is that right?
>
> A:    Yes, sir.
>
> Q:    You're American, right?
>
> A:    African American.
>
> Q:    African American, okay.
>
> A:    Yes, sir.
>
> Q:    All right. And so is your understanding - do you know what the national origin - is the national origin claim, to your knowledge, the same as the race discrimination claim?
>
> A:    Yes, sir.
>
> Q:    Is it based on the same facts?
>
> A:    That's - I guess so. I'm African American race, yes.

(Doc. 65-6, p. 54.)

Accordingly, the Court finds that Offord's national origin discrimination claim is not a separate and distinct claim. As such, an analysis of Offord's national origin claim would merely duplicate the Court's analysis of his race claim. *See Bullard v. OMI Georgia, Inc.*, 640 F.2d 632, 634 (5th Cir. 1981) (in some contexts, national origin and

racial discrimination are "so closely related . . . as to be indistinguishable.") When viewing the facts, it is clear that Offord is alleging race discrimination, and that his claim of discrimination on the basis of national origin are merely superfluous. Accordingly, Defendants' request that the Court dismiss Offord's claim that he was subjected to a hostile work environment claim on the basis of his national origin is **GRANTED**.

### D.  Offord's Retaliation Claim

Title VII contains an anti-retaliation provision that "prohibits an employer from discriminating against an employee or job applicant because that individual opposed any practice made unlawful by Title VII." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (internal quotations, citation, and alterations omitted); 42 U.S.C. § 2000e-3(a).  A plaintiff establishes a *prima facie* case of retaliation by showing: (1) he engaged in a protected activity; (2) an adverse employment action occurred; and (3) there was a causal link between the protected activity and the adverse employment action. *Hernandez*, 670 F.3d at 657 (citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)).

In support of the motion, Defendants argue that Defendants' refusal to give Offord a gas purchase order does not constitute an adverse employment action.  Defendants further content that Offord cannot point to sufficient evidence to establish a casual connection between the filing of his Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination and Defendants' refusal to send him internet sales leads.

Offord fails to present any argument or evidence in opposition to Defendants' contention that the Company's refusal to give him a gas purchase order does not constitute an adverse employment action. Offord contends, however, that after he filed his EEOC Charge of Discrimination, Defendants stopped sending him internet sales leads. Offord failed to provide the Court with the relevant portions of his deposition. However, a review of the testimony attached to Defendants' motion reveals that, according to Offord, prior to the filing of his EEOC Charge of Discrimination, internet leads from multiple websites were forwarded to his cellular phone by Defendants. However, after he filed his EEOC Charge of Discrimination, he stopped receiving internet sales leads. (Doc. 65-6, pp. 71-73.)

Because Offord does not present any direct evidence of retaliation, his retaliation claim is evaluated under the *McDonnell Douglas* burden-shifting framework. *See Septimus v. Univ. of Hous.*, 399 F.3d 601, 607-08 (5th Cir. 2005) (applying the *McDonnell Douglas* framework in a Title VII retaliation case). The *McDonnell Douglas* framework requires a plaintiff first to demonstrate a prima facie case of retaliation. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007). "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *LeMaire*, 480 F.3d at 388-89 (citation omitted).

Here, Defendants argue that Offord cannot establish a causal link between his EEOC Charge of Discrimination and the internet sales leads. However, viewing the facts

in the light most favorable to Offord, the Court finds that he has presented sufficient evidence to establish a dispute of material fact as to whether there was a casual link. Further, Defendants failed to state a legitimate, non-retaliatory reason for its decision to stop sending Offord internet sales leads.

In sum, the Court finds that Offord has presented sufficient evidence to establish a dispute of material fact from which a jury could conclude that Defendants retaliated against him following his filing of an EEOC Charge of Discrimination. Accordingly, Defendants' request that the Court dismiss Offord's retaliation claim is **DENIED**.

### E.     Offord's Constructive Discharge Claim

"Constructive discharge occurs when an employee has quit [his] job under circumstances that are treated as an involuntary termination of employment." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004). To succeed on his constructive discharge claim, Offord must show "working conditions . . . so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Hypolite v. City of Houston*, 493 Fed. Appx. 597, 607-608 (5th Cir. 2012) (quoting *Nassar v. Univ. of Tex. Sw. Med. Ctr.*, 674 F.3d 448, 453 (5th Cir. 2012)). There must be "a greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment." *Id.* (quoting *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011)). Therefore, courts in the Fifth Circuit consider aggravating factors including: (1) demotion; (2) reduction in salary; (3) reduction in job responsibility; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to

encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Id.* (citing *Nassar*, 674 F.3d at 453). Here, Defendants argue that Offord cannot point to sufficient evidence to establish these factors.

In opposition, Offord argues that he felt compelled to resign after a verbal alteration with Lane. In support of this argument, Offord points to his deposition, during which he testified about the verbal altercation between he, three African American co-workers, and Lane on June 21, 2012. (Doc. 68-3, p. 14; Doc. 65-6, pp. 25-31.) Offord failed to point to evidence that Lane physically attacked or threatened to physically attack Offord. Offord further failed to point to any evidence to support his contention that Lane kept a gun on his person and in his car. Offord also failed to point to any evidence that Lane displayed his gun on the day of the verbal altercation, or that Lane threatened to shoot Offord.

As noted above, to survive summary judgment, Offord must present evidence of working conditions even more egregious than those required to establish a hostile working environment. *Hypolite*, 493 Fed. Appx. at 607-608. During his deposition, Offord confirmed that he was not terminated, his compensation was not reduced, he was not suspended or demoted, and his job duties were not changed. (Doc. 65-6, pp. 64-65.) Thus, the only factor Offord can rely on to meet the reasonable employee test is "badgering harassment, or humiliation by the employer calculated to encourage the employee's resignation." *Id.*

While Lane's comments on June 21, 2012 were unprofessional and boorish, such comments do not amount to conduct so intolerable that a reasonable employee would feel compelled to resign. Further, Offord's subjective belief that he "had to leave or risk bodily harm," without more, is insufficient to meet the extremely high standard for a constructive discharge claim. *Compare Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir. 2009) (concluding that evidence that African-American plaintiff's co-workers repeatedly displayed a noose and threatened violence qualifies as "egregious for purposes of constructive discharge"), *and Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1190-91, 1199 (7th Cir. 1992) (concluding that considerable evidence supported the district court's finding of constructive discharge where the plaintiff's boss constantly made racist comments, brandished gun, took a photograph of himself holding gun to the plaintiff's head, and passed that photo around office), *with Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 991-92 (5th Cir. 2008) (employee failed to meet the reasonable employee test where she claimed that she was not compensated appropriately, not given career development opportunities, not allowed to accrue compensatory time, harassed and discriminated against, and "excluded from prestigious retreats"). Indeed, Offord has failed to cite to any binding case law that would require the Court to conclude otherwise.

In sum, the Court concludes that Offord has failed to present to sufficient evidence to establish a dispute of material fact from which a jury could conclude that he was constructively discharged on June 21, 2012. This conclusion is underscored by Offord's own deposition, in which he testified that he had secured a job at a different dealership

on June 7, 2012. (Doc. 65-6, pp. 31-32.) Accordingly, Defendants' request that the Court dismiss Offord's constructive discharge claim is **GRANTED**.

### F.     Offord's Assault and Battery Claims

In Louisiana, a battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact . . ." *Landry v. Bellanger*, 851 So. 2d 943, 949 (La. 2003) (citing *Caudle v. Betts*, 512 So. 2d 389, 391 (La. 1987)). According to the Louisiana Supreme Court, the defendant's intention need not be malicious nor need it be an intention to inflict actual damage. *Id.* (citing *Caudle*, 512 So. 2d at 391). It is sufficient if the defendant intends to inflict either a harmful or offensive contact without the other's consent. *Id.* (citing *Caudle*, 512 So. 2d at 391). In contrast, "assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. § 14:36.

In support of the motion, Defendants argue that Offord cannot point to sufficient evidence to establish his assault and battery claims as to Lane or Garafola. In opposition, Offord failed to present any argument or evidence in opposition to Defendants' argument that he cannot point to sufficient evidence to establish his assault and battery claims as to Garafola. Offord contends, however, that Lane intended to touch him on his face and buttocks, and that the touching was offensive. In support of his argument, Offord points to his deposition testimony, in which he testified that Lane touched his face to ensure that he was clean shaven, as well as his testimony that Lane patted and punched him in the buttocks. (Doc. 68-3, pp. 41-42.) According to Offord, Lane "used to always cough in his hands and he made it known that he [did]n't wash his hands after he use[d] the

bathroom." (Doc. 68-3, p. 42.) As a result, Offord "had to wash [his] face." (Doc. 68-3, p. 42) ("But he would touch my face, and the thought that he didn't wash his hands after he used the bathroom and he was touching my face, it - I didn't like that.")

In support of the motion, Defendants argue that Offord cannot point to sufficient evidence to establish that Lane intended to make a harmful or offensive contact. Thus, Defendants argue Offord's battery claim must be dismissed. However, the actor need not form the intention that his actions be harmful or offensive. *Molette v. City of Alexandria*, No. CV04-0501-A, 2005 U.S. Dist. LEXIS 44043, at *23 (W.D. La. Sept. 30, 2005) (citing Landry, 851 So.2d at 949). Rather, in the tort liability analysis, the element of intent is satisfied if the actor desires to "bring about a result which will invade the interests of another in a way that the law forbids. The actor may be liable although intending nothing more than a good-natured practical joke, or honestly believing that the act would not injure the plaintiff, or even though seeking the plaintiff's own good." *Caudle*, 512 So. 2d at 391. Viewing the facts in the light most favorable to Offord, the Court finds that he has pointed to sufficient evidence to establish a dispute of material fact from which a jury could conclude that a battery was committed. Accordingly, Defendants request that the Court dismiss Offord's battery claim must be denied.

As it relates to his assault claim, Offord must establish three elements: (1) "an intent to scare mental element"; (2) "conduct by defendant of the sort to arouse reasonable apprehension of bodily harm"; and (3) "the resulting apprehension on the part of the victim." *State v. Blaise*, 504 So.2d 1092 (La. App. 5th Cir. 1987). Here, Offord

failed to address, let alone present any evidence to establish these elements. As such, Defendants' request that the Court dismiss Offord's assault claim must be granted.

Accordingly, Defendants' request that the Court dismiss Offord's assault and battery claims is **GRANTED IN PART** and **DENIED IN PART**.

### G. Offord's Intentional Infliction of Emotional Distress Claim

In Louisiana, in order to recover for intentional infliction of emotional distress, a plaintiff must establish: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). In support of the motion, Defendants argue that Offord cannot point to sufficient evidence to establish these elements.

In opposition, Offord failed to point the Court to specific evidence to support each prong of his intentional infliction of emotional distress claim. Instead, Offord generally argues that where there is a question as to whether there was pattern of harassment, summary judgment is inappropriate. However, Offord's bare assertion that there are genuine disputes of material fact, without more, is insufficient. Even assuming, *arguendo*, that the evidence in the record establishes that Lane's conduct was extreme and outrageous, Offord has failed to point the Court to any evidence whatsoever to establish that the emotional distress suffered by him rises to the level of severe distress required to support such a claim, or that Lane desired to inflict severe emotional distress

upon Offord or knew that severe emotional distress would be certain or substantially certain to result from his conduct toward Offord. Accordingly, the Court finds that Offord has failed to present sufficient evidence to establish a dispute of material fact from which a jury could conclude that Lane is liable for intentional infliction of emotional distress. As such, Defendants' request that the Court dismiss Offord's intentional infliction of emotional distress claim is **GRANTED**.

IV.    **Conclusion**

Accordingly,

**IT IS ORDERED** that **Defendants' Motion for Summary Judgment (Doc. 65)** is **GRANTED IN PART** and **DENIED IN PART**.

·    Defendants' request that the Court dismiss Offord's federal and state law discrimination claims against Lane, or any other individual supervisor or fellow employee, is **GRANTED**. Accordingly, Offord's federal and state law discrimination claims against Lane, or any other individual supervisor or fellow employee, are **DISMISSED**.

·    Defendants' request that the Court dismiss Offord's claim under La. R.S. § 23:631 is **GRANTED**. Accordingly, Offord's claim under La. R.S. § 23:631 is **DISMISSED**.

·    Defendants' request that the Court dismiss Offord's claim that he was subjected to a hostile work environment claim on the basis of his sex is **GRANTED**. Accordingly, Offord's hostile work environment claim on the basis of his sex is **DISMISSED**.

- Defendants' request that the Court dismiss Offord's hostile work environment claim on the basis of his race is **DENIED**.

- Defendants' request that the Court dismiss Offord's hostile work environment claim on the basis of his national origin is **GRANTED**. Accordingly, Offord's hostile work environment claim on the basis of his national origin is **DISMISSED**.

- Defendants' request that the Court dismiss Offord's retaliation claim is **DENIED**.

- Defendants' request that the Court dismiss Offord's constructive discharge claim is **GRANTED**. Accordingly, Offord's constructive discharge claim is **DISMISSED**.

- Defendants' request that the Court dismiss Offord's battery claim is **GRANTED IN PART** and **DENIED IN PART**. Accordingly, Offord's battery claim as to the action of Wayne Garafola *only* is **DISMISSED**.

- Defendants' request that the Court dismiss Offord's assault claim is **GRANTED**. Accordingly, Offord's assault claim is **DISMISSED**.

- Defendants' request that the Court dismiss Offord's intentional infliction of emotional distress claim is **GRANTED**. Accordingly, Offord's intentional infliction of emotional distress claim is **DISMISSED**.

Baton Rouge, Louisiana, this 29th day of September, 2014.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**